JEFFREY W. KRAMER (SBN 071547)
ARVIN TSENG (SBN 245648)
TROYGOULD PC
1801 Century Park East, 16th Floor
Los Angeles, California 90067-2367
Telephone: (310) 553-4441
Facsimile: (310) 201-4746

Attorneys for Plaintiffs and Counter-
Defendants ProElite, Inc.; Real Sport, Inc.;
ProElite.com (f/k/a EliteXC.com); and
EliteXC Live.

FILED
CLERK, U.S. DISTRICT COURT
AUG 20 2008
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRO ELITE, INC., a New Jersey corporation; REAL SPORT, INC., a California corporation; ELITEXC.COM, INC., a California corporation; and ELITEXC LIVE, INC., a California corporation,<br><br>Plaintiffs and Counter-Defendants,<br><br>v.<br><br>WALLID ISMAIL, an individual; WALLID ISMAIL PROMOCOES E EVENTOS LTDA EPP, and DOES 1 through 10, inclusive<br><br>Defendants and Counter-Claimants.<br><br>v.<br><br>DOUG DELUCA; DAVID MARSHALL; KURT BRENDLINGER; ERIC PULIER; GARY SHAW; SANTA MONICA CAPITAL PARTNERS; PRO ELITE II; I FIGHT, INC.; and XYZ DEFENDANTS,<br><br>Third Party Defendants. | Case No. 2:07-cv-02015-GAF-VBK<br><br>[PROPOSED] AMENDED COMPLAINT FOR:<br><br>(1) DECLARATORY RELIEF;<br>(2) NEGLIGENT MISREPRESENTATION;<br>(3) UNFAIR COMPETITION (COMMON LAW); and<br>(4) VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT, BUSINESS AND PROFESSIONS CODE §§ 17200, et seq. |

**TroyGould PC**

1

[PROPOSED] AMENDED COMPLAINT

02436/0002 175384.1

Plaintiffs complain against defendants as follows:

## THE PARTIES

1. Plaintiff ProElite Inc. ("ProElite") is a corporation organized and existing under the laws of the State of New Jersey, and transacting business in the County of Los Angeles, State of California. ProElite and its affiliates, plaintiffs Real Sport, Inc., ProElite.com (formerly known as EliteXC.com, Inc. and I-Fight, Inc.) and EliteXC Live were formed to capitalize on the popularity and growth of mixed martial arts ("MMA"), in which athletes use a combination of a variety of fighting styles, including boxing, judo, jiu jitsu, karate, kickboxing, muy thai, tae kwan do, and wrestling.

2. Plaintiff Real Sport, Inc. ("Real Sport") is a corporation organized and existing under the laws of the State of California, and transacting business in the County of Los Angeles, State of California. Real Sport is a wholly owned subsidiary of ProElite, and is the holding company of ProElite.com and EliteXC Live.

3. Plaintiff ProElite.com is a corporation organized and existing under the laws of the State of California, and transacting business in the County of Los Angeles, State of California. EliteXC.com was formerly known as "EliteXC.com" and "I-Fight, Inc.," and was formed to exploit MMA as a business through the Internet.

4. Plaintiff EliteXC Live ("EliteXC Live") is a corporation organized and existing under the laws of the State of California, and transacting business in the County of Los Angeles, State of California. EliteXC Live was formerly "MMA Live, Inc." and "Jungle Fight Championship, Inc.," and was formed to exploit MMA as a business through producing and promoting live events featuring top fighters in MMA.

5. Defendant Wallid Ismail is an individual, a native of Brazil, and a former top MMA fighter known among MMA fans as "The Gracie Killer" for his

tournament wins over four members of the Gracie family, including an upset win over legendary Brazilian jiu jitsu fighter Royce Grace, whom Ismail choked unconscious in less than five minutes.

6. Defendant Wallid Ismail Promocoes E Eventos LTDA EPP ("Ismail Promocoes") is, according to plaintiffs' information and belief, a business entity formed under the laws of Brazil, and transacting business in the County of Los Angeles, State of California. According to Wallid Ismail, Ismail Promocoes is a company that Ismail owns and which is entitled to his exclusive services and to the exclusive use of his name and likeness in connection with MMA. Wallid Ismail and Ismail Promocoes are referred to herein collectively as "Ismail."

## JURISDICTION AND VENUE

7. Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332, based on the complete diversity of citizenship between plaintiffs and defendants. The amount in controversy exceeds $75,000 exclusive of interests and costs, as will more fully appear herein.

8. This Court has personal jurisdiction over defendants because they transact business in California and have sufficient minimum contacts with California in connection with the events giving rise to this action and the Counterclaim And Third Party Complaint in this action.

9. Venue is proper within this district pursuant to 28 U.S.C. § 1391, as the transactions and occurrences giving rise to the claims alleged herein took place within this district, and defendants do business in this district.

## GENERAL ALLEGATIONS

10. Beginning in or around June 2006, the Third Party Defendants in this action (Santa Monica Capital Partners, David Marshall, Doug DeLuca, Eric Pulier, and Kurt Brendlinger) and Ismail entered into negotiations to form a company to exploit the growing popularity of MMA in the United States and throughout the world. In or around August 2006, the Third Party Defendants formed plaintiff

ProElite.com (then named "I-Fight, Inc.") and continued their negotiations with Ismail on behalf of and for the benefit of ProElite.com. In the course of these negotiations, Ismail represented that he was an experienced organizer and promoter of MMA events in Brazil and Japan, and that he and/or his company owned the rights to the trademarks, design marks, television shows and other intellectual property relating to "Jungle Fight," "Jungle Fight Championship" and the website www.junglefightchampionship.com. (the "Jungle Fight IP"). The Jungle Fight Championship is an MMA event that was first staged in Brazil's Amazon rain forest to raise worldwide awareness of the need for preservation and conservation of the rain forest. The Jungle Fight Championship had become well known among MMA fans and was believed to be one of the premier MMA events worldwide.

11. In or around August 2006, ProElite.com developed a business plan for the exploitation of MMA throughout the world through live events and through the Internet, disclosed their business plan to Ismail, began raising the necessary capital to carry out their business plan, and engaged attorneys to draft agreements whereby Wallid Ismail, through Ismail Promocoes, would provide his services to ProElite.com and its affiliates as an MMA organizer and promoter, and would grant plaintiffs the exclusive use of his name and likeness and an exclusive license to the Jungle Fight IP.

12. In or around September 2006, in furtherance of their MMA business plan, the Third Party Defendants formed plaintiff EliteXC Live as a sister corporation to ProElite.com and formed plaintiff Real Sport to be the sole shareholder of EliteXC Live and ProElite.com.

13. In or around September 2006, in furtherance of their MMA business plan, plaintiffs Real Sport, EliteXC Live and ProElite.com arranged a $10 million private placement of securities and a reverse merger transaction whereby the shareholders of Real Sport would exchange their shares of stock in Real Sport for shares of stock in a publicly-held corporation to be re-named "ProElite, Inc."

Plaintiffs scheduled a closing of this private placement and reverse merger for September 29, 2006.

14.  In or around September 2006, at the request of Wallid Ismail, ProElite.com began making payments to Ismail Promocoes of $5,000 per week in advance of the September 29, 2006 closing, and with the understanding that Ismail would agree to provide his services and the Jungle Fight IP to plaintiffs and participate in the closing.

15.  On or about September 29, 2006, after extensive negotiations over the terms of the contracts to be entered into between plaintiffs and Ismail Promocoes, and just prior to the scheduled closing of the private placement and reverse merger transactions, Ismail refused to execute the agreements with plaintiffs. In particular, Ismail refused to represent and warrant that he and Ismail Promocoes were the sole owners of the Jungle Fight IP as he had claimed, and plaintiffs obtained information indicating that Antonio Inoki and possibly other third parties might have ownership interests in and possibly control over this intellectual property.

16.  In the days following Ismail's September 29, 2006 refusal to execute agreements with plaintiffs, and because of the uncertainty over whether Ismail and Ismail Promocoes owned and controlled the Jungle Fight IP, plaintiffs developed a modified business plan to exploit MMA without reference to Ismail and without using the Jungle Fight IP, entered into contracts with an experienced fight promoter to organize and promote the MMA live events, and closed the private placement and reverse merger transactions necessary to carry out the MMA business plan. The private placement and reverse merger transactions closed on the basis of a business plan that did not include Ismail or the Jungle Fight IP.

17.  In or around October 2006, plaintiffs entered into a three-year agreement with Showtime to televise plaintiffs' MMA events.

18. In or around November and December 2006, plaintiffs learned through the Internet that Ismail was using plaintiffs' business plan to form and operate a competing business.

19. On or about December 14, 2006, plaintiffs held a press conference in which they publicly announced the launching of their new MMA business and their contract with Showtime to televise plaintiffs' MMA events.

20. On or about December 14, 2006, plaintiffs received a letter from attorneys for Ismail making reference to plaintiffs' press conference and demanding that plaintiffs compensate Ismail based on an alleged "fully enforceable agreement" and asserting various other theories on which Ismail contends he is entitled to compensation from plaintiffs.

## FIRST CLAIM

### (For Declaratory Relief Against All Defendants)

21. Plaintiffs incorporate herein by reference paragraphs 1 through 20 of this complaint.

22. An actual controversy has arisen and exists between plaintiffs and defendants, in that plaintiffs contend that:

   (a) There is no enforceable agreement or any agreement between plaintiffs and Ismail relating to plaintiffs' business, the MMA business or anything else;

   (b) Plaintiffs made no agreement to compensate Ismail for doing anything in connection with plaintiffs' preparation of a PPM;

   (c) Plaintiffs made no agreement to compensate Ismail for information of any kind;

   (d) Plaintiffs did not receive any confidential or proprietary information from Ismail;

   (e) Plaintiffs are not using Ismail's name or likeness in their business, are not using the Jungle Fight IP in their business, and

are not using or benefiting from anything that Ismail provided to plaintiffs during the course of their negotiations;

(f) The negotiations between plaintiffs and Ismail terminated in September 2006 without any agreement being reached because Ismail refused to agree to the terms that plaintiffs offered to him, and because Ismail would not warrant that he owned the Jungle Fight IP; and

(g) In fact, the transaction that plaintiffs were negotiating with Ismail could not have been consummated because the oral representations that Ismail made to plaintiffs regarding his ownership of the Jungle Fight IP were false, in that Ismail did not have ownership or exclusive ownership of the Jungle Fight IP.

23. Defendants dispute these contentions, and contend in their letter of December 14, 2006 that there is a "fully enforceable agreement" between plaintiffs and defendants and that defendants are entitled to compensation from plaintiffs pursuant to this agreement and on various other theories asserted in the letter, including quantum meruit for services allegedly rendered and for using confidential information that defendants allegedly provided.

24. A judicial declaration is appropriate and necessary at this time so that the parties may understand their rights and obligations, if any, under the purported "fully enforceable agreement," and because plaintiffs have no adequate remedy at law to resolve this controversy. A judicial declaration is also appropriate and necessary at this time to avoid a multiplicity of actions, to prevent defendants from interfering with the development of plaintiffs' business by asserting false claims against plaintiffs, and to enable plaintiffs to raise such additional funds as may be necessary to support and expand their business.

## SECOND CLAIM

(For Negligent Misrepresentation Against All Defendants)

25. Plaintiffs incorporate herein by reference paragraphs 1 through 20 of this complaint.

26. Beginning in or around June 2006 and continuing through September 2006, Ismail represented initially to the Third Party Defendants and thereafter to plaintiffs that Ismail was the exclusive owner of the Jungle Fight IP.

27. When Ismail made his representations to the Third Party Defendants and to plaintiffs that he was the exclusive owner of the Jungle Fight IP, he had no reasonable grounds for believing these representations to be true.

28. When Ismail made his representations to the Third Party Defendants and to plaintiffs that he was the exclusive owner of the Jungle Fight IP, he made these representations for the purpose of inducing first the Third Party Defendants and thereafter plaintiffs to rely on his representations and in reliance on his representations to form a new MMA business based in part on the Jungle Fight IP, to pay Ismail for the Jungle Fight IP, and to offer Ismail equity participation in the new business.

29. When Ismail made his representations to the Third Party Defendants and to plaintiffs that he was the exclusive owner of the Jungle Fight IP, the true facts were that Ismail did not have exclusive ownership of the Jungle Fight IP, and in fact did not have a chain of title and all trademark papers to the Jungle Fight IP, did not know whether the Jungle Fight IP was encumbered with any liens; did not control the Jungle Fight IP copyrights, and did not have licenses for any of the music used in the Jungle Fight events.

30. When Ismail made his representations to the Third Party Defendants and to plaintiffs that he was the exclusive owner of the Jungle Fight IP, the Third Party Defendants and plaintiffs were ignorant of the true facts and reasonably relied on Ismail's representations. In reliance on Ismail's representations,

plaintiffs engaged legal counsel to prepare a private placement memorandum based on plaintiffs' anticipated ownership of the Jungle Fight IP; to prepare proposed agreements with Ismail whereby he would transfer the rights to the Jungle Fight IP to plaintiffs, would contribute his services to plaintiffs, and would receive an equity interest in the new MMA business plaintiffs were forming; and to negotiate with Ismails' two attorneys for the purpose of obtaining Ismail's agreement to participate in the new MMA business. In further reliance on Ismail's representations, plaintiffs incurred expenses and made payments to Ismail in September 2006 totaling $15,000.

31. As a direct and proximate result of Ismail's misrepresentations to plaintiffs, plaintiffs have been damaged in amounts in excess of $75,000, according to proof at trial.

### THIRD CLAIM

(For Common Law Unfair Competition Against All Defendants)

32. Plaintiffs incorporate herein by reference paragraphs 1 through 20 and 26 through 31 of this complaint.

33. When Ismail through his attorney sent his December 14, 2006 letter to plaintiffs, Ismail had already formed an MMA business to compete with plaintiffs. In or around February 2007, Ismail entered into a business transaction with a company called "Infotec" for the purpose of competing against plaintiffs. Later, in or around 2007 or 2008, Ismail entered into a second business transaction for the purpose of competing with plaintiffs in the MMA business.

34. Ismail has gained an unfair commercial advantage in his efforts to compete with plaintiffs by taking and using plaintiffs' business plan in his own business, by publicizing and repeating the baseless claims asserted in his December 14, 2008 letter to those involved in the MMA business and who might do business with plaintiffs, and by falsely portraying himself as the victim of unscrupulous business practices by plaintiffs, all for the purpose of discouraging

others to do business with plaintiffs and thereby to provide Ismail with a competitive advantage.

35. Plaintiffs have been damaged, in an amount to be proven at trial, by Ismail's deceptive and unfair business practices, as alleged above.

36. As a direct and proximate result of Ismail's deceptive and unfair business practices, plaintiffs have suffered, and unless Ismail is restrained and enjoined, will continue to suffer, great and irreparable harm in their business relationships and great and irreparable harm to their competitive position in the marketplace, for which damages would not be an adequate remedy.

37. Ismail's conduct as alleged herein has been willful and malicious, and was done with a specific intent to harm plaintiffs, so as to justify an award of punitive damages in an amount sufficient to punish Ismail for his wrongful conduct and make an example of him.

## FOURTH CLAIM

(For Violation of the Unfair Business Practices Act, Bus. & Prof. Code § § 17200 *et seq.*, Against All Defendants)

38. Plaintiffs incorporate herein by reference paragraphs 1 through 20, 26 through 31 and 33 through 34 of this complaint.

39. By misrepresenting to plaintiffs that he was the exclusive owner of the Jungle Fight IP for the purpose of inducing plaintiffs to pay him for the Jungle Fight IP, to include him in their new MMA business as an equity owner, and to pay him money in September 2006 and thereafter, Ismail was committing unlawful, unfair and fraudulent business practices in violation of California Business and Professions Code section 17200.

40. By making false claims that plaintiffs' wrongfully deprived him of an equity interest in ProElite, by portraying himself as a victim, and by publicizing these claims to those involved in the MMA industry for the purpose of discouraging others from doing business with plaintiffs, Ismail was committing

and continues to commit unlawful, unfair and fraudulent business practices in violation of California Business and Professions Code section 17200.

41. As a direct and proximate result of Ismail's unlawful, unfair and fraudulent business practices, plaintiffs have suffered, and unless defendants are restrained and enjoined, will continue to suffer, great and irreparable harm in their business relationships and great and irreparable harm to their competitive position in the marketplace, for which damages would not be an adequate remedy.

42. Plaintiffs are entitled to an order of restitution, compelling Ismail to return everything of value he has taken from plaintiffs and all profits he has derived from his unlawful, unfair and fraudulent business practices. Plaintiffs are also entitled to an injunction prohibiting Ismail from continuing his unlawful, unfair and fraudulent business practices.

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

<u>On the First Claim for declaratory relief:</u>

1. For a judicial declaration that there is no enforceable agreement or any agreement between plaintiffs and Ismail relating to plaintiffs' business, the MMA business or anything else; that plaintiffs made no agreement to compensate Ismail for doing anything in connection with plaintiffs' preparation of a PPM; that plaintiffs made no agreement to compensate Ismail for information of any kind; that plaintiffs did not receive any confidential or proprietary information from Ismail; that plaintiffs are not using Ismail's name or likeness in their business, are not using the Jungle Fight IP in their business, and are not using or benefiting from anything that Ismail provided to plaintiffs during the course of their negotiations; that negotiations between plaintiffs and Ismail terminated in September 2006 without any agreement being reached because Ismail refused to agree to the terms that plaintiffs offered to him, and because Ismail would not represent and warrant that he owned the Jungle Fight IP; and that the transaction that plaintiffs were negotiating with Ismail could not be consummated because the oral representations

that Ismail made to plaintiffs regarding his ownership of the Jungle Fight IP were false, in that neither Ismail nor Ismail Promocoes had or has exclusive ownership of the Jungle Fight IP;

<u>On the Second Claim for negligent misrepresentation:</u>

2.  For compensatory damages according to proof;

<u>On the Third Claim for common law unfair competition:</u>

3.  For an order restraining and enjoining defendants from continuing to engaging in false and deceptive business practices;

4.  For compensatory damages according to proof;

5.  For punitive damages according to proof:

<u>On the Fourth Claim for violation of the Unfair Business Practices Act:</u>

6.  For an order restraining and enjoining defendants from continuing to engage in unlawful, unfair and fraudulent business practices;

7.  For an order that defendants restore to plaintiffs everything of value they have taken from plaintiffs and all profits wrongfully derived from their unlawful, unfair and fraudulent business practices;

<u>On each claim:</u>

8.  For plaintiffs' costs of suit; and

9.  For such other and further relief as the court deems just and proper.

Dated: June 23, 2008                    TROYGOULD PC

By: /s/ Jeffrey W. Kramer
Jeffrey W. Kramer
Attorneys for Plaintiffs and Counter-Defendants ProElite, Inc.; Real Sport, Inc.; ProElite.com (f/k/a EliteXC.com); and EliteXC Live